HARRELL et al. v. HUMPHREY et al.
(No. 3337.)

(Court of Civil Appeals of Texas. Texarkana.
March 17, 1927. Rehearing Denied
March 24, 1927.)

Judgment ⟨⟩432—Default judgment held improperly set aside where attorney became ill and overlooked case but client made no inquiries regarding defense.

In suit to set aside default judgment, it appeared that plaintiffs had secured an attorney to defend original suit, but the attorney became ill and overlooked the case, that one of plaintiffs knew of illness but made no inquiry as to preparation for defense, and that plaintiffs were notified by attorney for other side that case was pending. Held, evidence did not show proper diligence in defending suit, and default judgment was improperly set aside.

Appeal from District Court, Cherokee County; C. A. Hodges, Judge.

Suit by D. C. Humphrey and others against S. M. Harrell and others. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Smith & Lanier, of Jasper, and Perkins & Perkins, of Rusk, for appellants.

J. B. Forse, of Newton, for appellees.

HODGES, J. This suit was filed on the 26th day of March, 1926, by the appellees, Humphrey, Bean, and Martin, to enjoin an execution and set aside a judgment rendered against them at a former term of that court. The following is a brief statement of the facts set out in the pleadings and about which there is no apparent dispute:

In August, 1925, V. G. Beckham became indebted to the Citizens' State Bank of Rusk, Tex., in the sum of $450, evidenced by a promissory note due October 1st after date. To secure the payment of that indebtedness Beckham executed a chattel mortgage on several head of horses and mules and three log wagons. The mortgage contained a clause which included any indebtedness which the bank might acquire against Beckham by assignment. In November, 1925, the bank filed suit in the district court of Cherokee county against Beckham for the collection of that debt and the foreclosure of the mortgage. The bank also incorporated in the same suit a note made by Beckham to W. P. Richey for $127 and an account for $588.50 due from Beckham to the East Jasper Mercantile Company, a partnership composed of the appellants Lanier in this suit. The bank claimed to have acquired the note from Richey and the account from the East Jasper Mercantile Company by assignment for a valuable consideration. This made an aggregate indebtedness of $1,250, for which a judgment and a foreclosure upon the mortgaged property was sought against Beckham. As showing a lien securing the assigned indebtedness, as well as the note first mentioned, the bank relied on the stipulations in the mortgage which has just been referred to. The bank also joined as parties defendant in that suit A. Adams, C. C. Brown, J. L. Lanier, D. C. Humphrey, sheriff of Newton county, and the American Surety Company, surety on his official bond, John Bean, and Charley Martin. Judgment was sought against the parties other than Beckham for $750, on the ground that they had caused an injury to the mortgaged property. It appears that some time prior to the filing of the suit by the bank against Beckham, Adams had sued Beckham and caused a writ of attachment to be issued and levied upon the mortgaged property. Humphrey, the sheriff, who executed the writ, delivered the stock for safe-keeping to Bean and Martin. While in the possession of Bean and Martin, it is claimed, the stock was damaged. The suit of Adams against Beckham was settled and the property delivered to the receiver who had been appointed in the bank's suit against Beckham.

All parties defendant in the original suit of the bank against Beckham and others were cited to appear at the next term of the district court of Cherokee county, which began on December 14, 1925. On the 1st day of February, 1926, the case was called for trial. Adams, Brown, Lanier, and the American Surety Company were dismissed from the case, and judgment by default was rendered against Beckham for $1,250, and against Humphrey, Bean and Martin for $725. The judgment recites that upon a writ of inquiry it was determined that Humphrey, Bean and Martin had damaged the plaintiff in the sum of $725.

It appears that prior to the rendition of that judgment the mortgaged property had been sold by the receiver under an order of the court and the sum of $525 realized, which was by the court credited upon the judgment, and execution ordered for the remainder. Some time later the unpaid portion of the judgment was transferred to the appellants H. F. and G. D. Lanier, who, as stated above, composed a partnership doing business under the name of the East Jasper Mercantile Company, the assignor of the account upon which the bank sued Beckham. On the 18th day of February, 1926, an execution was issued on that judgment and placed in the hands of S. M. Harrell, constable, who levied on real estate belonging to Humphrey. Before the day of sale this suit was instituted by Humphrey, joined by Bean and Martin. They alleged in detail the history of the litigation culminating in the default judgment against them and the levy of the execution upon property belonging to Humphrey. They further pleaded

as a reason for their failure to answer in the original suit, No. 9639, that soon after being cited they employed an attorney to represent them upon the trial, but that on account of sickness of himself and wife occurring soon after his employment the attorney was unable to file an answer or to appear at the trial. They state that they depended upon the attorney to present their defense, and did not know that he had failed to do so, or that a judgment by default had been rendered against them, until after the adjournment of that term of the court. They also allege that they had a meritorious defense, stating, in substance, that the account of $588.50 and the note for $127 included in the suit by the bank had been fraudulently transferred for collection only, and for that reason the court did not have jurisdiction of the subject-matter of the suit. They also denied that the property was damaged to any extent, and further denied that the account transferred to the bank by the East Jasper Mercantile Company and the note assigned by Richey were secured by the mortgage executed by Beckham, alleging that those debts were contracted without any reference to that mortgage and were not covered by it. The appellants Harrell and H. F. and G. D. Lanier answered by a general demurrer and special exceptions and general and special denials. The case was submitted to the court, who, after hearing testimony offered in support of the plaintiffs' averments setting out their reasons for failure to answer in the original suit, and the charge that the account transferred by the East Jasper Mercantile Company to the bank was assigned for collection only, rendered the following judgment.

"It is therefore ordered, adjudged and decreed by the court that the plaintiffs D. C. Humphrey, John Bean, and Charley Martin do have and recover of and from the defendants H. F. Lanier and G. D. Lanier, partners doing business under the firm name and style of East Jasper Mercantile Company of Jasper County, Tex., and S. M. Harrell, all costs in this behalf expended, for which let execution issue. It is further ordered, adjudged, and decreed by the court that the injunction granted in the cause on the 26th day of March, A. D. 1926, be and is hereby in all things made permanent, and the said defendants, H. F. and G. D. Lanier, partners as aforesaid, are hereby forever restrained from causing to be issued any and all writs for the enforcement of said judgment, and that said judgment is hereby null and void as to each and all of said defendants. It is further ordered that the said S. M. Harrell be and is hereby restrained from executing any and all writs issued by this court now in his possession."

After reciting the facts the court concluded: (1) That the note for $127 assigned by Richey to the bank was secured by the terms of the mortgage, and that this sum when added to the note for $450 owned by the bank gave the trial court jurisdiction over the subject-matter of the suit; (2) that the plaintiffs in this suit had used proper diligence to secure representation in the trial of the original suit, and were not negligent in failing to appear and answer therein; (3) that the account for $588.50 transferred by the appellants to the bank, and which was included in the original suit, was transferred without consideration and solely for the purposes of collection, and was not within the terms of the mortgage given by Beckham to the bank; (4) that the mortgaged property was not injured while in the hands of the plaintiffs, and there was no basis for the claim of damages against them; and (5) that the price ($525) for which the mortgaged property was sold by the receiver and applied as a credit on the judgment was sufficient to satisfy the bank's debt and was the amount for which a judgment should have been rendered in the bank's favor in that suit. Upon those facts he concluded as a matter of law that the judgment against the plaintiffs below should be set aside and its enforcement enjoined. In this appeal the appellants contend that the findings of fact are not supported by the evidence.

Upon the issue of diligence by the appellees in presenting their defense in the trial of the original suit the substance of the evidence is as follows: Humphrey, one of the appellees, testified that he was served with a citation about November 15. A day or two later he spoke to F. P. Adams, an attorney and a member of the firm of Mooney, Adams & Hamilton, about representing him. He merely told Adams that he had been served with a citation, and asked him to go to Cherokee county to represent him in the case, and Adams told him that he would. Adams testified that he agreed with Humphrey to look after the case for him and Bean and Martin. On December 9 his wife became ill and needed his attention. On December 13 he became ill, and was unable to do any professional work. However, he was not confined to his bed all of the time. On January 18 he and his wife went to Marlin for their health, and remained there until some time in February after the adjournment of that term of the court. He never mentioned the matter of his employment to either of his partners. He had a telephone in his house, and telephone connection with the office. Hamilton, one of his partners, called at his house while he was sick, but he never thought to mention the matter of his employment to Hamilton or to Mooney. His firm represented some of the other defendants in the same suit, and both Mooney and Hamilton were present in court during that term in the interest of other defendants. The testimony shows that the attorney representing the bank mentioned the case to Judge Mooney, and asked him if they represented

Humphrey, Bean, and Martin, and was told that they did not. The testimony also indicates that the attorney for the bank wrote letters to Humphrey, Bean, and Martin calling their attention to the fact that the case was pending and would be called for trial. Humphrey admitted that he knew that Adams was sick before the latter left for Marlin, but he never asked Adams whether or not he had filed any answer for him, or what preparations he had made for the defense. He never mentioned the case to him after the first conversation. The only conclusion which can logically be drawn from the testimony is that Adams probably overlooked the case, and for that reason failed to mention it to his partners or to Humphrey. It does not appear that any definite contract of employment was made with Adams, or that he was informed of the defensive facts upon which Humphrey and his codefendants intended to rely. The evidence clearly indicates a lack of diligence on the part of Humphrey to see that he was represented on the trial. The testimony tends strongly to show that his attention had been previously called to the case, and he knew that Adams was sick. The representative of the bank waited until the last of the term to take a judgment, in order that the defendants in the suit might have an opportunity to answer.

There is no evidence that Bean or Martin made any effort whatever to present their defense. Our conclusion is that the evidence is insufficient to show proper diligence on the part of the appellees, and that the judgment by default should not have been set aside and its enforcement enjoined.

Because of the insufficiency of the evidence the judgment is reversed, and the cause remanded.