## HUMPHREY et al. v. HARRELL et al.
### (No. 1843.)

Court of Civil Appeals of Texas. Beaumont. July 3, 1929.

Rehearing Denied July 17, 1929.

Adams & Hamilton, of Jasper, and Adams & McAlister, of Nacogdoches, for appellants.

Perkins & Perkins, of Rusk, Smith & Lanier, of Jasper, and Seale & Denman, of Nacogdoches, for appellees.

O'QUINN, J. On February 1, 1926, the Citizens' State Bank of Rusk, Tex., obtained a judgment in the district court of Cherokee county, Tex., against V. G. Beckham of Cherokee county and D. C. Humphrey, John Bean, and Charlie Martin of Newton county. At the next term of said court on March 26, 1926, appellants Humphrey, Bean, and Martin brought this suit to set aside this judgment and to enjoin the,levy of an execution issued by virtue thereof. On a hearing before the court, judgment was for appellants, granting the relief sought. The case was appealed to the Texarkana Court of Civil Appeals, and said judgment was reversed and the case remanded for a new trial. 292 S. W. 920. By agreement, the venue was changed to Nacogdoches county, and the instant trial was before the same judge who first tried the case in Cherokee county, and judgment was for appellees. The instant trial was upon the same pleadings as in the first trial. The facts shown are practically the same as on the first trial—no material additional evidence adduced. The facts, undisputed, briefly are:

In August, 1925, V. G. Beckham became indebted to the Citizens' State Bank of Rusk, Tex., in the sum of $450, evidenced by a promissory note due October 1st after date. To secure the payment of this note, Beckham executed a chattel mortgage on a logging outfit, consisting of several head of horses and mules and three log wagons. The mortgage contained a clause which included any indebtedness which the bank might acquire against Beckham by assignment. In November, 1925, the bank filed suit in the district court of Cherokee county against Beckham for the collection of that debt and the foreclosure of the mortgage. The bank also incorporated in the same suit a note made by Beckham to W. P. Richey for $127 and an account for $588.50 due from Beckham to the East Jasper Mercantile Company, a partnership composed of the appellants Lanier, in this suit. The bank claimed to have acquired the note from Richey and the account from the East Jasper Mercantile Company by assignment, for a valuable consideration. This made an aggregate indebtedness of $1,250, for which a judgment and a foreclosure upon the mortgaged property was sought against Beckham.

As showing a lien securing the assigned indebtedness, as well as the note first mentioned, the bank relied on the stipulations in the mortgage above mentioned. The bank also joined, as parties defendant in that suit, A. Adams, C. C. Brown, J. L. Lanier, D. C. Humphrey, sheriff of Newton county, and the American Surety Company, surety on his official bond, John Bean and Charlie Martin. Judgment was sought against the parties other than Beckham for $750, on the ground that they had caused an injury to the mortgaged property. It appears that, some time prior to the filing of the suit by the bank against Beckham, Adams had sued Beckham and caused a lien of attachment to be issued and levied upon the mortgaged property. Humphrey, the sheriff, who executed the writ, delivered the stock for safe-keeping to Bean and Martin. While in the possession of Bean and Martin, it is claimed the stock were damaged. The suit of Adams against Bean was settled, and the property delivered to the receiver, who had been appointed in the bank's suit against Beckham.

All parties defendant in the original suit of the bank against Beckham and others were cited to appear at the next term of the District Court of Cherokee county, which began on December 14, 1925. On the 1st day of September, 1926, the case was called for trial. Adams, Brown, Lanier, and the American Surety Company were dismissed from the case, and judgment by default was rendered against Beckham for $1,250 and against Humphrey, Bean, and Martin for $725. The

judgment recites that upon a writ of inquiry it was determined that Humphrey, Bean, and Martin had damaged the plaintiff in the sum of $725.

It appears that prior to the rendition of the judgment the mortgaged property had been sold by the receiver under an order of the court and the sum of $525 realized, which was by the court credited upon the judgment and execution ordered for the remainder. Some time later the unpaid portion of the judgment was transferred to the appellees H. F. and G. D. Lanier, who, as stated above, composed a partnership doing business under the name of the East Jasper Mercantile Company, the assignor of the account upon which the bank sued Beckham. On the 18th of February, 1926, an execution was issued on that judgment and placed in the hands of S. M. Harrell, constable, who levied on real estate belonging to Humphrey. Before the day of sale, the instant suit was instituted by Humphrey, joined by Bean and Martin. They alleged, in detail, the history of the litigation culminating in the default judgment against them and the levy of the execution upon property belonging to Humphrey. They further pleaded, as a reason for their failure to answer in the original suit in which the default judgment against them was rendered, that, soon after being cited to appear and answer in said suit they employed an attorney to represent them upon the trial, but that, on account of sickness of himself and wife occurring soon after his employment, the attorney was unable to file an answer or to appear at the trial. They state that they depended upon the attorney to present their defense and did not know that he had failed to do so or that a judgment by default had been rendered against them until after the adjournment of that term of the court. They also alleged that they had a meritorious defense, stating, in substance, that the account of $588.50 and the note for $127, included in the suit by the bank, had been fraudulently transferred for collection only, and for that reason the court did not have jurisdiction of the subject-matter of the suit. They also denied that the property was damaged to any extent, and further denied that the account transferred to the bank by the East Jasper Mercantile Company and the note for $127, assigned by Richey, were secured by the mortgage executed by Beckham, alleging that those debts were contracted without any reference to that mortgage and were not covered by it.

The appellees Harrell and H. F. and G. D. Lanier answered by a general demurrer, several special exceptions, and general and special denial.

The case was tried to the court, who, after hearing and considering the pleadings of the parties and the evidence submitted, rendered judgment denying appellants any of the relief sought, dissolving the injunction granted prior thereto, and discharging appellees without day. This appeal is from that judgment.

Appellants present but one assignment of error, which is to the effect that the court erred in holding that the evidence was not sufficient to warrant a judgment for appellants for in that they have alleged and produced facts to show that they are entitled to the relief shown, because: (a) They were not guilty of negligence in failing to present their defense to the original suit; (b) that, as soon as they learned that judgment had been rendered against them, they at once brought proper suit to set same aside; and (c) they have shown by the pleadings and proof herein that they have a meritorious defense to the cause of action asserted against them in the suit wherein the judgment was rendered.

Upon the issue of diligence by the appellants, in presenting their defense in the trial of the original suit, the substance of the evidence is:

Humphrey, one of the appellants, was served with citation on November 15, 1925, requiring him to appear and answer on December 14, 1925. He testified that "after citation was served on me I made arrangements with an attorney to represent me"; that he made arrangements with F. P. Adams, a member of the firm of Mooney, Adams & Hamilton, at Jasper, Tex., to represent him and the other defendants, Bean and Martin, and that he expected said attorney to go to Cherokee county and represent them in the suit, and that Adams promised him that he would. Adams testified that he agreed with Humphrey that he would look after the case for him and Bean and Martin. Adams further testified that on December 9th his wife became ill with flu and needed his attention; that on December 13th he became ill and was confined to his bed until about the middle of January and was unable to do any professional work; that on January 18th he and his wife went to Marlin, Tex., for their health and remained there until some time in February, after the adjournment of that term of court at Rusk. He never mentioned the matter of his employment by appellants to either of his partners, being familiar with the matter and expecting to attend to it himself and that he would have done so but for the sickness of his wife and himself. He further testified that his partner, Judge Mooney, was at Rusk on appearance day representing defendants Lanier, Brown, and Adams, and would have answered for appellants had he (F. P. Adams) been in condition to have consulted with him and told him of their employment by Humphrey, Bean, and Martin. He says that he saw Humphrey on the streets of Jasper on January 17th, the day before he left for Marlin, but that nothing was said between them about the case. Adams then told Humphrey that he and his wife were sick

and that they were going to Marlin the next day. Hamilton, one of Adams' partners, called several times at his house while he was sick, but he never thought to mention the matter of his employment either to Hamilton or Mooney.

B. A. Hamilton, a member of the law firm of Mooney, Adams & Hamilton, testified, in substance, that he did not know of the employment of Adams by Humphrey, Bean, and Martin until after the judgment was rendered and the execution issued.

Bean and Martin testified, in substance, that they talked to Humphrey about the case and Humphrey told them that he had employed Adams to represent them; that they did not see Adams or have any communication with him; that they thought he was going to look after the matter for them; that they paid no further attention to the case.

██ Upon substantially the same evidence, the question of appellants' diligence was passed upon by the Texarkana Court of Civil Appeals and held against them. We think that holding correct. The evidence is insufficient to show such attention to their case and such diligence in preparing and presenting their defense as to warrant the relief sought. Bean and Martin relied upon Humphrey to secure counsel and defend the case. The evidence clearly shows lack of diligence on his part to see that he and his codefendants, who had left their defense in his hands, were represented on the trial. He knew that Adams was sick and that he was going to Marlin, and yet he neither inquired of him as to what had been done or would be done in the way of defending the suit. Neither did he communicate with either of Adams' partners about the matter. They were in Rusk representing some of the other defendants in the same case and would have properly taken care of appellant's interest if they had but been notified. Judgment was not taken until February 1st, the last day of the court. Ample time was afforded appellants to have prepared and presented their defense if they had paid any attention to their cases. It is apparent that Adams, because of the sickness of his wife and himself, overlooked the case, and for that reason failed to mention it to his partners or to Humphrey at the time he talked with him before he left for Marlin. The question of fraud is not in the case. Neither is it claimed that any act of the adverse party conduced to the failure of appellants to prepare and present their defense. Therefore, in order for appellants to have the judgment set aside, they must show such accident or mistake as would excuse their failure to answer. The burden was upon appellants to show, by allegation and proof, that they were prevented from urging against the judgment, of which they complained, defenses which would or might have prevented its rendition and that this prevention resulted from accident or mistake, unmixed with any fault on their part. In other words, it must not appear that the rendition of the judgment resulted from any inattention or negligence on their part, but they must show a clear case of diligence and merit to obtain the relief sought. We think the evidence wholly fails to excuse their failure to present their defense, and therefore the judgment must be affirmed, and it is so ordered.

Affirmed. ██